Private attorney general,

Nathan Peachey

715 Conley Road          1 (570) 966-0201

Mifflinburg Pennsylvania          n.peachey@republicfortheunitedstates.org

# District Court of the United States
## District of Wisconsin

12 0 0149

| | |
|---|---|
| Linda A Harding Freeholder and Nathan Peachey Plenipotentiary, and Private Attorney General for Citizens of the Republic for the United States of America,<br>*Plaintiffs,*<br><br>v.<br><br>ONEIDA COUNTY, et al.,<br>Gary L. Baier<br>Greg Berard<br>Ted Cushing<br>Paul Dean<br>Billy Fried<br>Dave Hintz<br>John Hoffman<br>Scott Holewinski<br>Jack Martinson<br>Matt Matteson<br>Bob Metropulos<br>David O'Melia<br>Sonny Paszak<br>Carol Pederson<br>Tom Rudolph<br>Jim Sharon<br>Denny Thompson<br>Mike Timmons<br>Romelle Vandervest<br>Peter Wolk<br>John Young<br>Patrick F O'Melia, et al., successors,<br>*Defendants.* | Citizens Criminal Charge,<br><br>1st Congress, Session II, Chapter 9, April 30, 1790, Section 14, <u>An Act for the Punishment of certain Crimes against the United States,</u><br><br>37th Congress, Session III, Chapter 67, Section 8, March 2, 1863, <u>An Act to prevent and punish frauds upon the Government of the United States,</u><br><br>39th Congress, Session I, Chapter 31, Section 2, April 9, 1866, <u>An Act to protect all Persons in the United States in their Civil Rights, and furnish means of their Vindication,</u><br><br>42nd Congress, Session I, Chapter 22, Section 1, April 20, 1871, <u>An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States,</u> |

1

## A. HISTORY

April 6th, 2011 wells Federal Bank proceeded with an unlawful Sheriff Sale.

On or about the end May of 2011, after discovering the fraud in the mortgage Affiant had with Wells Federal Bank of Wells, Minn. Affiant proceeded to seek any and all legal means to force said bank to produce documents to prove they ever had legal right to foreclose and have a sheriff sale.

October 11th, 2011 Affiant filed a Notice of Removal in district court of the Western district of Wisconsin. Upon receiving certified copies, Affiant sent to or served upon all necessary parties involved including the Oneida County Circuit Court and Sheriff Department on October 11, 2011.

On October 12th, 2011 officers from the sheriff's department came on Affiant's Horse Ranch and told her they were going to proceed with eviction, so she had to pack and get off the property (213 acres appraised at $875,000, where horse training, boarding and lessons were performed) or they would physically remove her. Affiant informed the officers of the Notice of Removal which had been supplied to the sheriff and county clerk's office. They informed her they had been advised by the Wells Federal Bank's Attorney, Deanne Koll, and Corporate Council for Oneida County, not to honor the Notice of Removal. Officers left after much discussion and did not return until October 20th, 2011. After officers left property, Affiant also was part of 4-party call to the Oneida County Corporation Council, who once the attorney understood what the call was about, proceeded to hang-up.

October 20,2011 on or about 8:15 a.m., officers arrived at Affiant's door of her 14x56 manufactured (temporary)home entered and announced they were there to enforce the eviction. Affiant once again reminded officers of Notice of Removal and again was told by them it did not matter. Affiant then asked if she could at least pack a bag, the officers agreed and proceeded to accompany Affiant, one officer in front and one office behind Affiant, to the bedroom and bathroom. Lastly, Affiant went to the spare bedroom to retrieve a winter jacket from the closet. Upon arriving, in said bedroom, there was a

2

loaded rifle in front of the closet door (loaded, due to the coyotes that had been killing Affiant's livestock). Being totally rattled by the whole event, without thinking Affiant grabbed the rifle, turned toward the bed to lay the rifle down. At the same moment, the officer saw the rifle and shouted gun, gun!!! Then the officer proceeded to jump on the back of Affiant driving her face first onto the bed. Affiant never pointed the gun at the officer or tried to resist officers from retrieving the gun. Officer then hand cuffed Affiant while still lying face down on bed. Affiant was then placed in back seat of squad car (never read her Miranda rights) and transported to Oneida County Jail. After Affiant was booked and ready to be placed in cell, Affiant asked if she would be allowed a phone and was told "No", stating someone would be talking to her in due time, which never happened.

October 21, 2011, on or about 1:30 p.m, Affiant was handcuffed to her waist and walked to a video room to appear for a bond hearing. Judge Mark Mangerson heard the case as Judge Patrick O'Melia was out of town. The court read the charges of obstructing officers, and a second charge of disorderly conduct with a weapon. District Attorney Michael Bloom asked the court for a $5,000 cash bond as Affiant had been evicted from her home and might not appear at future court dates. Judge Mangerson lowered the bond to $500 cash and asked Affiant if she had any questions. Affiant stated to Judge Mangerson," In doing a Notice of Removal to the district Court, it was her understanding, jurisdiction was now out of the hands of the local authorities, so how could any of these actions take place?" Judge Mangerson never responded to this question, instead set a hearing date with Judge O'Melia for October 27, 2011, and affiant was returned to her jail cell.

October 21, 2011, on or about 2:30p.m., Affiant was released without any information as to the whereabouts of her vehicle, dog, 6 registered horses, (2) manufactured mobile homes, misc. farm equipment, and all personal property. As Affiant traveled passed her ranch which was taken unlawfully, on her way to a friend's home where Affiant was staying it became clear everything was stolen. Affiant called the Oneida County Sheriff's Department, as to the location of said personal property, pet dog, horses, etc., with no return phone calls, in spite of Affiant leaving several voicemails specifically for

3

Officer Young. Unfortunately, Affiant had no clothes, phone, vehicle or knowledge of the location of any of these stolen items. On Monday, Affiant was forced to pay fees in order for her to retrieve two items that were stolen from her, specifically her automobile and pet dog. Unfortunately Affiant was unable to recover the remainder of her possessions, due to the lack of funds needed to pay the extortion in an amount that was in excess of $16,000.00 for the remaining stolen items.

October 24, 2011, on or about 5p.m., Affiant was allowed to travel to the manufactured homes where they were being stored with two Oneida County officers. Upon entering Affiant's home, Affiant found everything to be ransacked. All items, even those in the dresser drawers, including very valuable wedding rings, mother's rings, an antique clock and more were missing. Affiant was permitted to retrieve a suit case of clothing from her manufactured home. Affiant was then allowed to go the home of Leo Krombholz who was one of the accomplices involved in the ransacking, destruction and theft of all Affiant's personal items, extensive tools, large farming equipment, 6 registered horses and tack, items/pictures from 5 children, and parents long passed in which Affiant can now never replace, plus so many more items it would take days to list. Leo Krombholz has removed, destroyed and/or discarded, in excess of $120,000 of Affiant's property, some of which were antiques over 200 years old. This not including value of frozen meat/food stored. Affiant was allowed into one of two of the semi-trailers, to retrieve a suit case she had packed before being arrested. Affiant also tried to gain access to a filing cabinet, to retrieve legal documents, without success.

October 27, 2011, Affiant appeared for her 1st hearing in Oneida County Courthouse. Affiant filed Declaration of Facts in Affidavit for Immediate Dismissal, which included challenging Judge O'Melia's jurisdiction. Judge O'Melia claimed a letter would be needed from District Court stating the Federal Court had jurisdiction and until such time, Judge O'Melia had jurisdiction in Circuit Court. He then proceeded to set a pretrial hearing date on the criminal charges stemming from the unlawful and illicit eviction. Affiant continued to file several notices, motions and demands in the form of affidavits with both Judge Mangerson and Judge O'Melia for immediate

dismissal and the return of all stolen property. Unfortunately they obviously felt they had the authority to ignore Affiant's affidavits.

Judge Mangerson, via mailed letter, did state jurisdiction was in Federal Court and that he could not rule until it was remanded back to the Circuit Court (see attached). Judge O'Melia chose to ignore this clear and irrefutable fact.

The removal that was officially filed on October 11, 2011 with District Court was not remanded back to Circuit Court until the middle of January 2012. In spite of this, the unlawful and illegal eviction occurred on October 20, 2011. The Sheriff's Department, Clerk of the Circuit Court, Wells Federal Bank and their Attorney were duly served with the Notice of Removal on October 11, 2011.

January 24, 2012, while present for another scheduled court appearance, Affiant was presented with a bail jumping charge that was signed by DA Michael Bloom dated February 24, 2012, which is peculiarly 1 month later than the date served. This was a direct result of Affiant speaking with Leo Krombholtz, on January 10th, 2012 via a telephone call which she was instructed to make by Rochelle from Western Connection, a ranch holding Affiant's six horses. Rochelle stated that Affiant needed to call Leo Krombholtz as soon as possible, stating he was threatening to make dog food out of the her horses. Upon calling Krombholtz, Affiant soon discovered his whole purpose was, that he wanted the registration papers for her horses in exchange for a few of her personal items. On October 22th, 2011, Krombholtz called the sheriff to make report and filed erroneous charges.

January 25th, 2012 the charges were dropped, as Affiant produced a letter from Attorney Deanne Koll, which was a Wells Federal Bank letter dated October 24, 2011 giving Affiant permission to contact Krombholtz regarding her possessions so as to make arrangements for recovery of her stolen property. In the days which followed, Affiant discovered that the same document was faxed to the Sheriff's department on October 24, 2011.

On January 25, 2012 Affiant received limited documents from Oneida County Sheriff's Department, upon review of said documents discovered a forged document signed by Officer Tyler Young. (see attached)

On February 9th, 2012, Affiant sat in judge's chambers prior to jury trial with the court reporter, DA Bloom, and several witnesses. Judge O'Melia once again stated he had jurisdiction over Affiant. When asked if he was claiming jurisdiction over a sovereign person or he was claiming he had jurisdiction because Affiant wasn't a sovereign person, he stated he had jurisdiction and said he didn't even know what a sovereign was.

During the trial, the Sheriff's deputies were instructed to show a video recorded at the time of eviction for the jury, but asked for it to be off the record. Affiant had asked, on numerous occasions the right to discovery but nothing was forthcoming from the District Attorney's office including the video. The officer, who produced the video, was asked to provide a chain of custody for said video, to establish its authenticity. Affiant was denied the right of being shown the chain of custody, as it was clear such documentation didn't exist. In spite of this, the court proceeded and the jury was brought in to view the video with the implication it was unadulterated. Video did show the officer was responsible for injuries my dog's sustained to her leg.

Despite the fact that virtually all testimony given during the trial was conducive to the vindication of the Affiant, the atmosphere and presentation created by the officers of the court, including but not limited to certain instructions given to the jurors, and deceptive statements made intentionally or ignorantly by officers of the court was such that an environment was established that gave the jurors the gravely misguided notion that the Affiant was guilty of a crime where clearly no crime existed. Therefore, pursuant to the aforementioned statement of facts, be stewards of the law, as a direct result of their blatant, orchestrated and intentional disregard for the Affiant and Affiant declares that her civil and constitutional rights and liberties were clearly violated by those would the rule of law. Further Affiant sayeth naught:

**B. PRINCIPAL ISSUE**

1. Plaintiffs seek the intercession of the District Court of the United States judiciary, as guardians of the Constitution, to sustain Plaintiffs' claim for relief for cause, as the Defendants are engaged in juggernaut, corporate, constitutionally unlawful money state rule politics, and extortion. Due to the political structure of ONEIDA COUNTY, it cannot be a Citizen and party to the Constitution of the United States and the State of Wisconsin organic, and as a non-citizen they have no standing in law to act as any officer, and as such have committing fraud on their person.

2. Plaintiffs invoke the Free Exercise Clause of the First Amendment, Bill of Rights, U.S. Constitution; the Religious Freedom Restoration Act of 1993, Public Law 103-141, 107 Stat. 1488, 42 U.S.C. §2000bb (An Act to protect the free exercise of religion); and Public Law 97-280 (Declared the Bible is the Word of God). Plaintiffs assert that only a lawful Constitutional Court is lawful for them to appear pursuant to The Holy Bible at 1 Corinthians 6:1-8 prohibits those professing the Christian faith from entering secular Courts.

## C. FACTS AND BACKGROUND

*1.* "More and more lawyers are awaking to a perception of the truth that what divides and distracts us in the solution of a legal problem is not so much uncertainty about the law as uncertainty about the *facts* – the facts that generate the law. Let the facts be known as they are, and the law will sprout from the seed, and turn its branches toward the light" (Justice Benjamin N Cardozo) (emphasis added).

2. Defendants had, and have knowledge that they are perpetrating wrongs that are detrimental to the Plaintiffs and to others who follow the teachings of Plaintiffs who wish to uphold the principles and mandates of

7

God's Law, Constitution of the United States and the Constitution of West Virginia, in restoring this great country to its original moorings without the influence of the Westphalian philosophy or by Progressive mindsets that have redefined morals and ethics through the prism of "political correctness" by jettisoning God from government.

    3. Every person who, *having knowledge* that any of the wrongs conspired to be done, and mentioned in section 42 U.S.C.§1985 (2) (Conspiracy to interfere with civil rights) of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action;

FIRST CAUSE OF ACTION: Pursuant to Act of Congress August 6, 1846, the State of Wisconsin was admitted to the Union of the old United States. Plaintiffs have been teaching and propagating the principles of the Holy Bible and those of the Constitution for the old United States of America and the Constitution of Wisconsin. These teachings are being considered deviant and anti-government. Lies have speed, but truth has endurance, as will be proven during trial. The ONEIDA COUNTY CORPORATION as a person, has shifted responsibility and accountability, from its original moorings as a lawful County within the Constitutional geographical constructs of the State of Wisconsin, with a Republican form of Government, pursuant to the Wisconsin Constitution as guaranteed by the Constitution of the United States, to that of

a CORPORATION IN COMMERCE, an entirely strange and different political body corporate subdivision, <u>not</u> a subdivision of the Wisconsin admitted to the Union of the old United States on August 6,1846, pursuant to Act of Congress. This is not what the nation's founders and framers intended in the compact with the people of the original thirteen colonies and its descendants through increased population and statehood. This corporate status adds to the Plaintiffs' claim for sovereign immunity.

<u>SECOND CAUSE OF ACTION</u>: Plaintiffs have suffered much anguish, pain, injury, damages, harm, violation of rights, having endured grief, harm and personnel injury from named Defendants breaking and violating the law of these United States pursuant to 1st Congress, Session II, Chapter 9, April 30, 1790, Section 14, <u>An Act for the Punishment of certain Crimes against the United States;</u> 37th Congress, Session III, Chapter 67, Section 8, March 2, 1863,<u>An Act to prevent and punish frauds upon the Government of the United States;</u> 39th Congress, Session I, Chapter 31, Section 2, April 9, 1866, <u>An Act to protect all Persons in the United States in their Civil Rights, and furnish means of their Vindication;</u> 42nd Congress, Session I, Chapter 22, Section 1, April 20, 1871, <u>An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States. Plaintiffs are seeking the death penalty pursuant to the</u>

<u>THIRD CAUSE OF ACTION:</u> Named defendant officers, are mere Corporate Officers, participating in the scheme of pretending to be exercising the power of the sovereign people of Oneida County, through the peoples lawful State Constitution, but Defendants are mere officers of the ONEIDA COUNTY Corporation, operating a money state code of commerce, willingly,

impersonating officers at law, with intent to defraud Plaintiffs, Citizens of the sovereign people of the Republic for the United States of America and impersonating lawful Constitutional officials, as will be proven during trial.

### D. RIPENESS AND STANDING

1. "The essence of a true standing question is . . .[does] the plaintiff have a legal right to judicial enforcement of an asserted legal duty? This question should be seen as a question of substantive law, answerable by reference to the statutory or constitutional provision whose protection is invoked." See William Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 223 (1988) at 229.

2. A personally real, concrete and particularized controversy is at stake in this Complaint as to assure that concrete adverseness will sharpen the presentation of issues upon which this honorable Court so largely depends for illumination of difficult constitutional questions. *Baker v. Carr,* 369 U.S. 186, 204 (1962). Plaintiffs have suffered tremendously in because ONEIDA COUNTY engaged in the politics of commercial code, subjecting him to well-regulated and sustained political demonization by being stigmatized as a criminal.

3. In *Massachusetts v. Environmental Protection Agency,* 549 U.S. 497 (2007), Chief Justice Roberts of the United States Supreme Court reiterated
*three requirements for standing* that the court has derived from Article III of the Constitution, which limits the federal courts' jurisdiction to "cases" and "controversies." First there must be an allegation of a "concrete and particularized" injury, one that is "actual and imminent, not conjectural or hypothetical," and that affects the plaintiff personally and not simply "the public at large."

10

Second the injury must be "fairly traceable to the defendant's allegedly unlawful conduct." *Bennett v. Spear*, 117 S. Ct. 1154, 1163 (1997). Defendants have met this unlawful conduct that has spurred this action.

Third, the injury must be "likely to be redressed by the requested relief." *Northeastern Florida Contractors v. Jacksonville*, 508 U.S. 656, 663 (1993). Plaintiffs verily believe that this Court would redress the injury by the five reliefs requested. Plaintiffs believe that the District Court of the United States judiciary will be the final repository for relief as requested and sought in the interests of justice.

### E. JURISDICTION AND VENUE

1. This district Court of the United States has subject matter jurisdiction over this case under the Judiciary Act of 1st Congress, Session 1, Chapter 20, September 24, 1789, and any subsequent amendments up until June 1, 1781, the day the old original Constitutional Republic of the United States government ceased to exist and a new government pursuant to the February 21, 1781 Incorporation ACT of the District of Columbia, was established unlawfully against the will of the American people.

2. The courts of the United States will entertain jurisdiction of a cause where all the parties are aliens, if none of them object to it. Mason et al. v. The Blaireau,

### F. PARTIES

Plaintiff Harding and Peachey are law-abiding Citizens of Pennsylvania and Wisconsin and subsequently Citizens of the sovereign people of the Republic

11

for the United States of America, pursuant to Chief Justice of the Supreme Court of the United States and President Andrew Johnson's public Proclamation.

Defendants ONEIDA COUNTY is a sub-division corporate body politic of the STATE OF WISCONSIN, a foreign corporation with respect to a state, Vol. 20, CJS, p. 1785; NY *re Merriam*, 36 N.E. 505, 1441 S. Ct. 1973, 41 L. Ed. 287, as person, living in the State of Wisconsin. Officers are officers of the Corporation and not officials of the law.

### G. LAW AND ARGUMENT

1. The Supreme Court affirmed the sovereignty of the people in 1793 in *Chisholm v. Georgia*, 2 US 419 by Chief Justice John Jay stating, "At the Revolution, the sovereignty devolved on the people, and they are truly the sovereigns of the country, but they are sovereigns without subjects and have none to govern but themselves."  President Andrew Johnson likewise referenced this sovereignty in a proclamation on December 25, 1868, "and in the name of the sovereign People of the United States."

2. In an address delivered by Justice Hugo L Black at the Einstein Memorial Meeting-Town Hall (N.Y.C.), May 15, 1955, Justice Black reiterated that "life without liberty" was not "worth living." "The desire of people to be free from government oppression" was the "same all over the world." The Constitution, Justice Black said, "with its absolute guarantees of individual rights was the best hope for the aspirations of freedom which men share everywhere. Justice Black also shared the traditional American distrust of concentrated government power.

3. Plaintiffs contend and submit that the Defendants have abandoned their roles as guardians of sound public policies. The Constitution, especially the Bill of Rights, is violated daily. Plaintiff Deegan has been denied a basic liberty to propagate and practice the teachings of the Holy Bible and the U.S. Constitution.

4. Unlawful aliens have long been recognized as persons guaranteed Fifth and Fourteenth Amendment due process of law and under equal protection of law. *Shaugnessy v. Mezei*, 73 S.Ct. 625 (1953); *Wong Wing v. U.S.*, 16 S.Ct. 977 (1896); *Yick Wo v. Hopkins*, 6 S.Ct.1064 (1886); *Mathews v. Diaz*, 96 S. Ct. 1883(1976); and *Plyler v. Doe*, 102 S.Ct. 2382 (1982). Curiously, Plaintiffs have been denied these very rights that favor unlawful aliens.

5. Muslims in the United States of America appear to have better entrenched rights under the First Amendment as observed in a recent decision of the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida in Case No. 08003497 when Judge Richard A. Nielsen, circuit court judge for Division L, agreed with counsel that Muslims have a right to remove the adjudication of Islamic issues from non-Muslim courts to their own ecclesiastical (sharia) courts. Again curiously, Plaintiffs have been denied these very rights that favor the Mohammedans, yet interestingly just today on the news, President Barrack Obama wrote a letter of apology in a letter to Afghan President Hamid Karzai for the burning of Korans at the largest American military base in Afghanistan, according to the White House and Karzai's office. But yet here in America, the very fabric of the Bible, our nations Religious Book, the Holy Book that teaches freedom of religion for all faiths, peace and forgiveness from transgression, the religion of grace, that build America strong, pursuant to the teachings of the Messiah, is being denied to the Plaintiffs.

6. The dissent written by Justice John Marshall Harlan in *Downes v. Bidwell*, 182 U.S. 244 (1901) held that the U.S. Congress was always bound to enact laws within the jurisdiction of the Constitution. In it, he said, "This nation is under the control of a written constitution, the supreme law of the land and the only source of the powers which our government, or any branch or officer of it, may exert at any time or at any place." He held that the Congress had no existence, and therefore had no authority, outside of the U.S. Constitution. He also said, "... **two national governments exist; one to be maintained under the Constitution, with all its restrictions, the other to be maintained by Congress outside and independently of that instrument**. By exercising such powers as other nations of the earth are accustomed to a radical and mischievous change in our system of government will result ... We will, in that event, pass from the era of constitutional liberty guarded and protected by a written constitution into an era of legislative absolutism ... **It will be an evil day for American liberty** if the theory of a government outside the supreme law of the land finds lodgment in our constitutional jurisprudence." (emphasis added).

Plaintiffs have reason to believe that Justice Harlan's cautionary warning has become an alarming reality in light of the Defendants' actions in the prosecution of Deegan, and the tactics being perpetrated against Plaintiff.

## H. RELIEF SOUGHT

1. As relief for the First Cause of Action, Plaintiffs Harding and Peachey seek an injunction from the district court of the United States to "pierce the Corporate veil" of ONEIDA COUNTY, to allow the return of the people of the organic county of Oneida to return to a lawful republican form of Government pursuant to the Constitution.

2. As relief for the Second Cause of Action, Plaintiffs seek the immediate arrest of all Defendants by the United States Marshall, pursuant to the Judiciary ACT of 1789 and further seek the punishment of death by the hanging of the neck for all named defendants pursuant to the 1st Congress, Session II, Chapter 9, April 30, 1790, Section 14, <u>An Act for the Punishment of certain Crimes against the United States,</u> Section 31 and 33.  Plaintiffs hereby plead the Cause of the named Defendants to be allowed the "benefit of the Clergy" for all those that repent from their evil deeds against the people of the county of Oneida, and may death by hanging be spared.

3. As relief for the Third cause of Action, Plaintiff Harding and Peachey pray for a judicial order by the district court of the United States, for the immediate Dismissal of case No. 2011CM000502, DA Case No. 20110N, for lack of a "Claim for which Relief can be Granted" pursuant to the Constitution and the laws pursuant to it and the award of five million dollars as cumulative damages representing compensatory, aggravated, general, exemplary and special damages.

4.In the interests of justice, Plaintiffs reserve the right to amend this Criminal Complaint as more evidence surfaces, to buttress Plaintiff's claims.

## I. AFFIDAVIT OF PLAINTIFFS

Pursuant to the Judiciary Act by Congress of September 24, 1789, Section 35, that in all Courts of the United States, the parties may manage and plead their own causes personally or by the assistance of such counsel....

We crave the Court's indulgence in granting us the privilege of holding us to less stringent standards and to construe our pleadings liberally as in *Estelle v. Gamble,* 429 U.S. 97, 102 (1976) when Justice Thurgood Marshall cited *Haines v. Kerner*, 404 U.S. 519 (1972), concerning a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than 19 formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," quoting *Conley v. Gibson*, 355 U.S. 41, 45-46.

Respectfully submitted this 24th day of February, 2012.

*[signature]*                          *[signature]*

Linda Harding           Nathan Peachey


Plaintiffs *in propria persona*

Private Attorney General

Nathan Peachey

715 Conley Road                    1 (570) 966 0201

Mifflinburg, Pennsylvania          americanjusticegate@yahoo.com


*Linda Anne Harding*
*3499 Hancock Lake Rd*
*Harshaw Wisconsin 54529*
*715-612-2650*

16